UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
BRUNO BLAZINA,                                    :

                              Plaintiff,          :

        -against-                                 :

THE PORT AUTHORITY OF NEW YORK AND         **MEMORANDUM and ORDER**
NEW JERSEY; THE PORT AUTHORITY OF          :
NEW YORK AND NEW JERSEY POLICE                   06 CIV. 0481 (KNF)
OFFICER M. KOSTELNIK; THE PORT             :
AUTHORITY OF NEW YORK AND NEW
JERSEY POLICE OFFICERS JOHN DOE (1-5),     :

                              Defendants.         :
------------------------------------------------------------- x
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Plaintiff Bruno Blazina ("Blazina") brought this action, pursuant to 42 U.S.C. § 1983.

On October 20, 2008, the Court granted the defendant's Fed. R. Civ. P. 41(b) motion to dismiss

the action, for failure to prosecute, as the plaintiff's counsel, Joanne Dwyer ("Dwyer"), did not

arrive timely for the commencement of the parties' trial.  On October 28, 2008, the plaintiff

moved, pursuant to Fed. R. Civ. P. 60, to set aside the judgment.  The plaintiff's motion, and the

defendant's opposition to it, are addressed below.

## BACKGROUND

In January 2006, the plaintiff filed a complaint alleging, inter alia, Port Authority of New

York and New Jersey ("PANYNJ") Police Officer Michael Kostelnik ("Kostelnik" or "the

defendant"), violated rights secured to him by the Fourth and Fourteenth Amendments to the

Constitution, when Kostelnik caused him to be arrested wrongfully and prosecuted maliciously.[1]

*Pattern of Requests for Extensions by Dwyer*

While this action was pending, the following requests for extensions of time were made by Dwyer: (1) on September 11, 2006, Dwyer requested a 90-day extension of the deadline set for the parties to complete fact discovery.  This request was granted, and the deadline was extended to March 14, 2007; (2) on March 13, 2007, Dwyer sought an additional extension of the fact discovery deadline, to July 13, 2007–to allow her to obtain Blazina's medical records, depose a non-party witness, and "pursue further discovery"–which was granted; (3) at a September 17, 2007 pretrial conference, Dwyer requested an extension of time to respond to the defendant's summary judgment motion.  The request was granted, and the time was enlarged, to October 9, 2007; (4) on October 9, 2007, Dwyer requested a second extension to file a response to the defendant's summary judgment motion, which was granted to October 12, 2007; (5) on October 15, 2007, Dwyer requested a third extension of time to file a response to the defendant's summary judgment motion, which was granted to October 19, 2007; (6) on October 19, 2007, Dwyer made a fourth extension request, asking that she be allowed to file her response to the defendant's motion for summary judgment "a short time after midnight on October 19, 2007,"

---

[1] In his complaint, Blazina also raised a claim pursuant to 42 U.S.C. § 1985, as well as a claim pursuant to Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).  In addition to Kostelnik, Blazina named as defendants PANYNJ, and PANYNJ Police Officers John Doe 1-5 ("John Doe defendants"), and sought punitive damages.  Blazina later withdrew his 42 U.S.C. § 1985 claim.  The defendants moved for summary judgment, which was granted in part, and resulted in the dismissal of Blazina's claims for punitive damages and Monell liability against PANYNJ.

which was granted; (7) on May 12, 2008, Dwyer requested a one-week extension to submit a

joint pre-trial order, which was granted; (8) on May 20, 2008, Dwyer requested an additional

two-week extension–to June 3, 2008–to submit a joint pre-trial order, and Dwyer was granted an

extension to May 23, 2008; (9) on May 23, 2008, Dwyer requested either that she be allowed to

submit a "separate" joint pre-trial order, that is, a joint pretrial order prepared without

collaborating with the defendant, or that the deadline for submission of a joint pre-trial order be

extended to May 30, 2008; the latter request was granted; (10) on July 14, 2008, the plaintiff

moved for an extension of time to file and serve material pertinent to the Court's gatekeeping

responsibility respecting opinion trial testimony, see Daubert v. Merrell Dow Pharmaceuticals,

Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993).  The request was granted, and the deadline was

extended to August 4, 2008; (11) on August 4, 2008, Dwyer requested an additional extension, to

September 4, 2008, to file the plaintiff's Daubert submission(s), and this request was denied

because the Court would not have had adequate time, prior to the commencement of the trial, to

consider the plaintiff's Daubert submission(s); and (12) on August 21, 2008, Dwyer requested an

extension of time–from August 21, 2008, to September 3, 2008–to respond to the defendant's

motion in limine, and this request was denied, since this extension would not have allowed the

Court adequate time, prior to the commencement of the trial, to consider and resolve the motion

in limine.

   In addition, after failing to submit any Daubert material, despite her request for two

extensions of time to file such material, on October 15, 2008, Dwyer submitted a letter to the

Court, noting that Dr. Anie Kalayjian was Blazina's "treating psychotherapist," and that the plaintiff intended to have Dr. Kalayjian appear as a trial witness and testify about the "'talk therapy' that she engaged in with the plaintiff." Enclosed with this letter was a copy of Dr. Kalayjian's curriculum vitae. On October 17, 2008, the Court found that, based upon the above-referenced letter, "[t]alk therapy" appeared "to be a matter beyond the ken of the persons who" would likely serve as jurors at the trial. Therefore, "specialized knowledge imparted by Dr. Kalayjian would be needed in order for jurors to understand the evidence the plaintiff would elicit from her at trial," and, thus, a timely <u>Daubert</u> submission should have been made for a determination of the admissibility of Dr. Kalayjian's testimony. Since the plaintiff did not proffer a <u>Daubert</u> submission timely, the Court ruled the plaintiff could not elicit evidence regarding "talk therapy" from Dr. Kalayjian at the trial.

*Scheduling and Commencement of the Trial*

On July 7, 2008, at the final pretrial conference, the Court advised the parties the trial for this action would begin on October 20, 2008, at 10:00 a.m. On July 15, 2008, the Court filed an order memorializing the date on and the time at which the trial of the action would commence: October 20, 2008, at 10:00 a.m.

On October 20, 2008, Dwyer contends she telephoned the "Clerk of Court at about 9:15 a.m. . . . and left a message that [she] would be present in Court as soon as possible, but would be later than the 10:00 a.m. scheduled time." Dwyer does not identify the name or telephone number of the "Clerk of Court" on whose telephone she left a message. Dwyer claims further,

4

that, "at about 9:38 a.m.," she "personally spoke with the Clerk of Court," and she "indicated that [she] thought [she] could be present by 10:30 a.m." Dwyer maintains that she then discussed some of the pre-trial issues she wished to raise with the Court once she arrived at the courtroom. Dwyer states that, "[s]hortly after speaking with the Clerk," she entered a taxi, which was slowed by "traffic congestion." Due to this delay, Dwyer telephoned the Clerk again, at approximately 10:45 a.m., to inform the Clerk that she was "moments away from the Court," at which time the Clerk informed her that the plaintiff's case had been dismissed. Dwyer states she arrived at the courtroom "at about 10:56 a.m."

The plaintiff maintains that the Court should grant his motion to set aside the judgment entered against him, due to his failure to prosecute the action, based upon his counsel's failure to appear timely for trial, because he "was present and ready to proceed to trial," and the dismissal of the action "occurred through no fault of the plaintiff . . . but only through [his counsel's] fault." The plaintiff also contends Dwyer lacked "any bad faith intention to delay the proceedings before the Court," and that she appeared "on the date set for trial ready to proceed with the trial, albeit an hour later than scheduled." It is further alleged that it was Dwyer's "inadvertent mistake in time management . . . on the eve of trial that caused [her] to be late for the 10:00 a.m. court appearance."

The defendant opposes the plaintiff's motion, and submits: (1) the plaintiff fails to show an entitlement to relief under Fed. R. Civ. P. 60(b)(1) or 60(b)(6); and (2) Dwyer's failure to appear timely for trial was "another example of [the plaintiff's] dilatory conduct in prosecuting

this action," as evidenced by the "repeated[] . . . last-minute [requests for] extensions of court ordered deadlines," and Dwyer's tardy arrival at "each of the court appearances [she made,] in this case[,] prior to the trial."

## DISCUSSION

"Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).  Rule 60(b) "should be broadly construed to do substantial justice, . . . yet final judgments should not be lightly reopened." Id. (internal quotations and citations omitted).  A motion for Fed. R. Civ. P. 60(b) relief is addressed to the sound discretion of the district court.  See Browder v. Director, Dept. of Corrections of Illinois, 434 U.S. 257, 263 n.7, 98 S. Ct. 556, 560 n.7 (1978); Nemaizer, 793 F.2d at 61; Devino v. Duncan, 215 F. Supp. 2d 414, 416 (S.D.N.Y. 2002).

Rule 41(b) of the Federal Rules of Civil Procedure provides that, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  "[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting."  Link v. Wabash R.R. Co., 370 U.S. 626, 633, 82 S. Ct. 1386, 1390 (1962).  While "dismissal is a harsh remedy and is appropriate only in extreme [circumstances]," Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996), "the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts," Lyell Theatre Corp. v. Loews Corp., 682

F.2d 37, 42 (2d Cir. 1982).  The Second Circuit Court of Appeals has "fashioned guiding rules

that limit a trial court's discretion in this context," which include whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

U.S. ex rel. Drake v. Norden Systems, Inc., 375 F.3d 248, 254 (2d Cir. 2004).  "Generally, no

one factor is dispositive."  Shannon v. Gen. Elec. Co., 186 F.3d 186, 193-194 (2d Cir.

1999)(internal quotations and citations omitted).  Further, "the district court is not required to

discuss the factors on the record."  Id. at 194.

Rule 60(b)(1)

Under Fed. R. Civ. P. 60(b)(1), "the court may relieve a party or its legal representative

from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence,

surprise, or excusable neglect."  The Second Circuit Court of Appeals "has consistently declined

to relieve a client under subsection (1) of the burdens of a final judgment entered against him due

to the mistake or omission of his attorney by reason of the latter's . . . inability to efficiently

manage h[er] caseload."  Samuels v. Northern Telecom, Inc., 942 F.2d 834, 837 n.2 (2d Cir.

1991) (internal quotations and citations omitted).  Therefore, the plaintiff's request for relief

from the judgment because his counsel "mistakenly judged time in executing her final

preparations on the eve of trial and inadvertently created a situation where she could not appear

timely at 10:00 a.m. on October 20, 2008," does not afford a basis for relief under Rule 60(b)(1).

In addition, Dwyer's claim of "surprise" at the dismissal of the action for her failure to arrive in

the courtroom in a timely manner does not qualify as a basis for relief under Rule 60(b).  See

Nemaizer, 793 F.2d at 62 ("an attorney's failure to evaluate carefully the legal consequences of a

chosen course of action provides no basis for relief from a judgment [under Rule 60(b)(1)]").

Further, Dwyer's failure to arrive timely for the commencement of the trial could have been

prevented, if she had managed her time diligently, and thus, Dwyer cannot claim that her failure

constituted "excusable neglect."  See State Street Bank and Trust Co. v. Inversiones Errazuriz

Limitada, 374 F.3d 158, 177 (2d Cir. 2004) ("where a party fails to act with diligence, [s]he will

be unable to demonstrate that h[er] conduct constituted 'excusable neglect'") (citations omitted).

Dwyer has also not shown that her failure was due to inadvertence, since she concedes she knew

the trial was scheduled to commence at 10:00 a.m., on October 20, 2008, and she failed to submit

"highly convincing evidence" to show her failure to arrive timely was due to inadvertence.

See Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC, 496 F. Supp. 2d 354,

356 (S.D.N.Y. 2007) ("[i]n evaluating a Rule 60(b) motion, the courts of this circuit . . . require

that the evidence in support of the motion be highly convincing").

Rule 60(b)(6)

        Fed. R. Civ. P. 60(b)(6) provides, in relevant part: "the court may relieve a party or its

legal representative from a final judgment, order, or proceeding for . . . : (6) any other reason that

justifies relief."  "Generally, [i]t is well established . . . that a proper case for Rule 60(b)(6) relief

is only one of extraordinary circumstances, or extreme hardship. . . .  In typical civil proceedings,

[the Second Circuit Court of Appeals] very rarely grants relief under Rule 60(b)(6) for cases of

alleged attorney failure or misconduct."  Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004)

8

(internal quotations and citations omitted) (emphasis in original).  In order to constitute "extraordinary circumstances" under Rule 60(b)(6), "a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance, . . . or constructive disappearance."  Id.

In the case at bar, Dwyer did not abandon her client's case by way of "physical disappearance," since she has appeared on behalf of her client throughout this litigation, albeit in a dilatory and untimely manner.  Additionally, case law reveals that Dwyer's behavior does not constitute "constructive disappearance."  The Second Circuit Court of Appeals has found that, when supported by some evidence, an attorney suffering from a psychological disorder which caused him or her "to neglect almost completely his [or her] clients' business while at the same time assuring [the clients] that he [or she] was attending to it, and who had made him[ or her]self unavailable even to the trial judge," may establish "constructive disappearance," so as to afford Rule 60(b)(6) relief.  United States v. Cirami, 563 F.2d 26, 34 (2d Cir. 1977).  In addition, "constructive disappearance" has been found to encompass a situation where a plaintiff's attorney's failure to file any opposition to a motion for summary judgment resulted in dismissal of the plaintiff's case, when that dismissal "was the result of a complete failure on such counsel's part to even minimally attend to his obligations," and a "medical evaluation of plaintiff's former counsel [wa]s not necessary to show that something is obviously wrong with him."  Azzolini v. Marriot Int'l, Inc., No. 99 Civ. 11605, 2004 WL 360448, at *1, 2004 U.S. Dist. LEXIS 2882, at *2 (S.D.N.Y. Feb. 24, 2004).  The plaintiff has not submitted any evidence suggesting Dwyer has a psychological disorder; and, though she has asked for numerous extensions of time and failed

9

to meet her obligation to arrive for the trial timely, she has at least "minimally attend[ed] to her obligations." Id.

The case at bar is most analogous to the factual posture of Link v. Wabash R.R. Co., in which the plaintiff's attorney telephoned the district court, on the morning of a scheduled pretrial conference, and informed the court that he was "busy preparing papers to file" and would not arrive at the scheduled hour for the pretrial conference. See Link, 370 U.S. at 627-28, 82 S. Ct. at 1387. Two hours after the appointed time for the commencement of the pretrial conference, the district court dismissed the case, after having considered: (1) the history of the case–which had been pending for six years; (2) the plaintiff's counsel's failure to appear at the pretrial conference; and (3) the plaintiff's counsel's failure to proffer a "reasonable reason" for his failure to appear. Id. at 628-29, 82 S. Ct. at 1387-88. The Supreme Court found that: "[i]t was certainly within the bounds of permissible discretion for the court to conclude that the telephone excuse offered by petitioner's counsel was inadequate to explain his failure to attend. And it could reasonably be inferred from his absence, as well as from the drawn-out history of the litigation . . . , that petitioner had been deliberately proceeding in dilatory fashion." Id. at 633, 82 S. Ct. at 1390.

In the instant case, Dwyer made a dozen last-minute, and occasionally untimely, requests that deadlines set by the Court be extended, and, on October 20, 2008, approximately twenty minutes before the trial was set to commence, Dwyer spoke with the Court's staff to inform the Court she would not be arriving timely for the trial, but anticipated a 10:30 a.m arrival. Dwyer did not actually enter the courtroom until approximately 10:56 a.m., and has failed to provide any

10

explanation for her failure to appear timely other than stating she managed her time poorly on the eve of trial.  This explanation is inadequate.  The Court has considered Dwyer's history of seeking numerous extensions of time in this action, as well as her inadequate excuse of poor time management, for her failure to appear timely for the trial, and has determined that Rule 60(b)(6) relief is not warranted.  Although the plaintiff suggests in his motion papers that denying him Rule 60 relief would impose a harsh penalty on him, the plaintiff "voluntarily chose [Dwyer] as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."  Id. at 633-34 n.10, 82 S. Ct. at 1390 n.10; see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 396, 113 S. Ct. 1489, 1499 (1993) ("clients must be held accountable for the acts and omissions of their attorney[s]").  Rather, in an instance where "an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."  Link, 370 U.S. at 633-34 n.10, 82 S. Ct. at 1390 n.10; see also Nemaizer, 793 F.2d at 62-63 ("an attorney's actions, whether arising from neglect, carelessness, or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary").

Rule 41(b) Standard for Dismissal

The plaintiff contends the five factors discussed in Drake militate in favor of the Court vacating the judgment, see Drake, 375 F.3d at 254; however, as explained in the analysis above, respecting Rule 60 relief, the plaintiff's counsel has exhibited a dilatory pattern throughout the litigation, and this derelict conduct culminated in her failure to arrive at 10:00 a.m., on October

20, 2008, for the commencement of the parties' trial.  The Court has considered <u>Drake</u>, and finds that denying the plaintiff's request, for Rule 60 relief, is appropriate.  <u>See</u> <u>Shannon</u>, 186 F.3d at 194.

## CONCLUSION

For the reasons set forth above, the Court denies the plaintiff's motion to vacate or set aside the judgment, Docket Entry No. 69.

Dated: New York, New York
      April 22, 2009

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE